UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RASHID RAHMAN,

*Plaintiff*,

-against-                                                23-cv-5665

CHUNG LEE,

*Defendant*.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE***

Ryan E. Manley
Ryan T. Donovan
Lauren N. Mordacq
CONWAY, DONOVAN & MANLEY, PLLC
*Attorneys for Chung Lee*
50 State Street, 2nd Floor
Albany, New York 12207
(518) 436-1661
RManley@lawcdm.com

Date: August 14, 2024

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**…………………………………………………….    ii

**PRELIMINARY STATEMENT**……………………………………………………    1

**ARGUMENT**

      **POINT I:**    **PLAINTIFF FAILED TO EXHAUST ALL AVAILABLE REMEDIES AS TO HIS CLAIMS, AND THEY SHOULD BE THEREFORE DISMISSED**…………………………………    1

      **POINT II:**    **IN THE ALTERNATIVE PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE RELATED TO TREATMENT OR DAMAGES BEYOND THE FACTUAL ALLEGATIONS IN THE COMPLAINT**…..    4

      **POINT III:**    **PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE OR TESTIMONY REGARDING DR. LEE'S MEDICAL TREATMENT OF OTHER PATIENTS, INCLUDING THOSE WHO HAVE OR HAVE HAD LAWSUITS AGAINST DR. LEE**………………..    7

      **POINT IV:**    **PLAINTIFF'S EXPERT SHOULD BE PRECLUDED BECAUSE THE OPINIONS PREFERRED IN HIS REPORT ARE NOT RELEVANT AND WOULD NOT ASSIST THE JURY IN DETERMINING THE ULTIMATE ISSUE IN THIS CASE**……………………………………………….    12

      **POINT V:**    **PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY**…………………………………………….    18

      **POINT VI:**    **DEFENDANT SHOULD BE ALLOWED TO DISCUSS THE ESSENTIAL FACTS OF PLAINTIFF'S PRIOR FELONY CONVICTIONS**……………………………………………    20

**CONCLUSION**…………………………………………………………………..    23

i

# TABLE OF AUTHORITIES

*Acosta v. Thomas,*
No. 916-cv-0890 (LEK/TWD), 2019 WL 5197313 (N.D.N.Y. June 21, 2019)…    6

*Adams v. Smith*,
No. 15-cv-913, 2018 WL 1363495 (N.D.N.Y March 16, 2018)……………….    6

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
301 F.R.D. 31 (S.D.N.Y. 2014)……………………………………………..    17

*Ayazi v. New York City Dep't of Ed.,*
586 F. App'x 600 (2d Cir. 2014)…………………………………………….    4

*Beastie Boys v. Monster Energy Co.*,
983 F. Supp. 2d 354 (S.D.N.Y. 2014)………………………………………    9

*Bermudez v. City of New York*,
No. 15-cv-3240 (KAM/RLM), 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019)……...    11, 13

*Bradshaw v. Burns*,
656 F. Supp. 3d 369 (N.D.N.Y. 2023)………………………………………    21, 22

*Bradshaw v. Fletcher*,
No. 919-cv-428 (BKS/TWD), 2024 WL 149748 (N.D.N.Y. Jan. 12, 2024)……...    19

*Coleman v. Durkin*,
585 F. Supp. 3d 208 (N.D.N.Y. 2022)………………………………………    21, 22

*Colon v. New York State Dep't of Corr. & Cmty. Supervision*,
No. 15-cv-7432 (NSR), 2019 WL 5294935 (S.D.N.Y. Oct. 17, 2019)…………..    1,2,3

*Coney Island Resorts, Inc. v. Giuliani*,
103 F. Supp. 2d 645 (E.D.N.Y. 2000)………………………………………    4

*Consorti v. Armstrong World Indus., Inc.*,
72 F.3d 1003 (2d Cir. 1995)…………………………………………………    19

*Consorti v. Owens-Corning Fiberglass Corp.*,
518 U.S. 1031 (1996)………………………………………………………    19

*Daubert v. Merrell Dow. Pharm.*,
509 U.S. 579 (1993)………………………………………………………...    12

*Doe v. Lima*,
No. 14-cv-2953 (PAE), 2020 WL 728813 (S.D.N.Y. Feb. 13, 2020)…………    9

*ESPN, Inc. v. Office of Comm'r of Baseball*,
    76 F. Supp. 2d 383 (S.D.N.Y. 1999)…………………………………………...  9

*Johnson v. Killian*,
    680 F.3d 234 (2d Cir. 2012)…………………………………………………..  2

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
    No. 08-cv-8426 (WHP/HBP), 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012)……..  13

*Laureano v. City of New York*,
    No. 17-cv-181 (LAP), 2021 WL 3272002 (S.D.N.Y. July 30, 2021)……………  20, 21

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997)…………………………………………………  19

*Lombardo v. Stone*,
    No. 99-cv-4603 (SAS), 2002 WL 113913 (S.D.N.Y. Jan. 29, 2002)……………  9

*Marshall v. Port Auth. of New York & New Jersey*,
    No. 19-cv-2168 (LJL), 2022 WL 17491006 (S.D.N.Y. Dec. 5, 2022)…………...  19

*Martinez v. City of New York*,
    No. 16-cv-79 (NRM) (CLP), 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022)…..  8

*McKinley v. Moore*,
    No. 921-cv-678 (BKS/CFH), 2024 WL 217734 (N.D.N.Y. Jan. 19, 2024)……...  11

*Mele v. Davidson & Assocs., Inc.*,
    No. 02-cv-0450E(F), 2004 WL 2285111 (W.D.N.Y. Oct. 7, 2004)………………  7

*Nelson v. McGrain*,
    No. 12-cv-6292, 2019 WL 2590608 (W.D.N.Y. June 25, 2019)…………………  4,6

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)…………………………………………  13

*Phillips v. City of New York*,
    871 F. Supp. 2d 200 (E.D.N.Y. 2012)…………………………………………  12, 19

*Porter v. Nussle*,
    534 U.S. 516 (2002)…………………………………………………………..  1

*Ramsay-Nobles v. Keyser*,
    No. 16-cv-5778 (CM), 2020 WL 359901 (S.D.N.Y. Jan. 22, 2020)……………..  20, 21

*Ridge v. Davis,*
    639 F. Supp. 3d 465 (S.D.N.Y. 2022)……………………………………… 21, 22

*Ross v. Blake,*
    578 U.S. 632 (2016)……………………………………………………... 2

*Rowe Entm't, Inc. v. William Morris Agency, Inc.,*
    No. 98-cv-8272 (RPP), 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003)………….. 17

*Smith v. Fricke,*
    635 F. Supp. 3d 152 (N.D.N.Y. 2022)…………………………………… 6, 11

*Taylor v. Evans,*
    No. 94-cv-8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997)……………. 17

*Thomas v. Leifeld,*
    No. 9:13-cv-321 (MAD/TWD), 2018 WL 3387690 (N.D.N.Y. July 12,
    2018)………………………………………………………………… 21

*Thorne v. Lewis,*
    No. 19-cv-24 (VLB), 2021 WL 4324475 (D. Conn. Sep. 23, 2023)……………. 2

*Tomaselli v. New York & Presbyterian Hosp.,*
    728 F. App'x 41 (2d Cir. 2018)………………………………………….. 13

*Tomaselli v. Zimmer Inc.,*
    No. 14-cv-4474 (RA/SN), 2017 WL 2820065 (S.D.N.Y. Jan. 20, 2017)……….. 13

*United States v. Aboumoussallem,*
    726 F.2d 906 (2d Cir. 1984)……………………………………………... 9

*United States v. Al Kassar,*
    582 F. Supp. 2d 498 (S.D.N.Y. 2008)………….………………………… 9

*United States v. Brand,*
    467 F.3d 179 (2d Cir. 2006)……………………………………………... 11

*United States v. Estrada,*
    430 F.3d 606 (2d Cir. 2005) …………………………………………….
    20

*Venetsky v. United States,*
    No. 16-cv-08464 (DF), 2019 WL 1768967 (S.D.N.Y. Mar. 31, 2019)……........ 13, 17

*White v. Williams,*
    No. 12-cv-1892, 2016 WL 1237712 (N.D.N.Y. Jan 11, 2016)…………………. 2

*Williams v. Geraci*,
 No. 14-cv-5742 (SIL), 2020 WL 5848738 (E.D.N.Y. Sept. 30, 2020)…………..   2, 12

*Woelfle v. Black & Decker (U.S.) Inc.*,
 No. 1:18-cv-486, 2023 WL 4407577 (W.D.N.Y. July 7, 2023)…………………..   12

*Woolfolk v. Baldofsky*,
 No. 19-cv-3815 (WFK/ST), 2022 WL 2600132 (E.D.N.Y. July 8,   2022)……....   19

**<u>Statutes</u>**

42 U.S.C. § 1983……………………………………………………………………*Passim*

42 U.S.C. § 1997……………………………………………………………………*Passim*

Fed. R. Civ. P. 26………………………………………………………………………7,13

Fed. R. Evid. 403………………………………………………………………………9, 13

Fed. R. Evid. 404(b)…………………………………………………………………*Passim*

Fed. R. Evid. 609……………………………………………………………………20, 21

## PRELIMINARY STATEMENT

Defendant Chung Lee respectfully submits this memorandum of law in support of his motion *in limine* seeking an order from this Court: 1) dismissing Plaintiff's claims due to his failure to exhaust all available administrative remedies; (2) precluding Plaintiff from offering any evidence related to treatment or damages beyond the factual allegations listed in the Complaint; (3) precluding Plaintiff from offering any evidence or testimony regarding Dr. Lee's medical treatment of other inmates, including those who have or have had lawsuits against Dr. Lee; (4) precluding Plaintiff's expert because the opinions proffered in his report are not relevant and would not assist the jury in determining the ultimate issue in this case; (5) precluding Plaintiff from requesting a specific dollar amount from the jury; and (6) allowing Defendant to discuss the essential facts of Plaintiff's prior felony convictions.

## <u>ARGUMENT</u>

### POINT I

### PLAINTIFF FAILED TO EXHAUST ALL AVAILABLE REMEDIES AS TO HIS CLAIMS, AND THEY SHOULD THEEREFORE BE DISMISSED.

Plaintiff failed to exhaust all available remedies regarding all the claims he sets forth in his Amended Complaint.

"[U]nder the PLRA, '[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Colon v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-cv-7432 (NSR), 2019 WL 5294935, *6 (S.D.N.Y. Oct. 17, 2019) (quoting 42 U.S.C. § 1997e(a)); *see Porter v. Nussle*, 534 U.S. 516,

1

532 (2002).  "In order to properly exhaust [their] claims, a plaintiff must invoke all available administrative mechanisms, including appeals, through the highest level for each claim." *Id.* (internal quotation marks and citation omitted).  To that end, a plaintiff cannot "bootstrap untimely complaints regarding his medical treatment . . . to related, but distinct, complaints" under a timely grievance "by declaring that all such complaints comprised one specific and continuing grievance." *Id.* at *10.

Moreover, "[a] court may not excuse a failure to exhaust, even to take 'special circumstances' into account." *Colon*, 2019 WL 5294935, at *6 (*citing Ross v. Blake*, 578 U.S. 632, 639 (2016)).

The Second Circuit has found a narrow exception when the specific conduct complained of continues after the grievance process is exhausted.   In *Johnson v. Killian*, the court held that a fully exhausted 2005 grievance was sufficient to underpin a subsequent lawsuit about the same, continuing behavior. *Johnson v. Killian*, 680 F.3d 234, 238–39 (2d Cir. 2012).  However, the court cautioned that its holding was "necessarily limited to cases in which a prior grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit." *Id.* at 239.

The narrow *Johnson* exception has been held inapplicable to "specific instances of the alleged denial of medical care" like those alleged here, which must be separately grieved. *White v. Williams*, No. 12-cv-1892, 2016 WL 1237712, at *7 (N.D.N.Y. Jan 11, 2016), *R&R adopted*, 2016 WL 1239263 (N.D.N.Y. March 29, 2016); *accord, e.g., Thorne v. Lewis*, No. 19-cv-24, 2021 WL 4324475, at *4-5 (D. Conn. Sep. 23, 2023); *Colon*, 2019 WL 5294935, at *10-11.

Here, Plaintiff has failed to exhaust all available remedies. He did file a single grievance arising out of the June 2017 discontinuance of his pain medication.  However, his appeal statement

with respect to that same grievance focuses solely on his disagreement with his doctor's giving him a different brand of a blood thinning medication—in other words, Plaintiff filed that appeal with respect to a medication which was neither discontinued nor a pain medication, based on an incident in August 2017. (See Exh. A to Manley Decl.) He therefore did not exhaust his remedies with respect to the June 2017 grievance, which is the only grievance he actually filed regarding medical care under Dr. Lee's watch. (See Exhs. A and B to Manley Decl)

In the alternative and as discussed *infra*, although Plaintiff's Complaint discusses a variety of events occurring prior and subsequent to the June 2017 grievance, he neglected to file grievances with DOCCS, as required by the PLRA, as to any of these events outside of the discontinuance of a specific medication. For exhaustion purposes, DOCCS was put on notice that a specific medication was discontinued in the June 2017 grievance. DOCCS was not administratively put on notice that any treatment or medications prescribed <u>after</u> that date constituted ineffective treatment. Accordingly, Plaintiff utterly failed to avail himself of, much less to exhaust, the prescribed administrative remedies as to any claims he may be attempting to assert against Dr. Lee that postdate or predate the discontinuation of Plaintiff's Ultram prescription by the RMD and the subsequent grievance that he filed. All claims outside of Plaintiff's grievance should therefore be dismissed for failure to exhaust administrative remedies. *Colon*, 2019 WL 5294935, *9-*10 (finding that while one of Plaintiff's grievances documented serious medical conditions as to medical complications following his surgeries, Plaintiff failed to describe any complaint against the medical staff at the facility relating to the treatment that was provided to him following his surgeries, which was fatal in the sense that Plaintiff never complained of his injuries to one of his providers thus prison officials could not investigate his complaints).

Accordingly, Plaintiff's claims should either be dismissed in their entirety or be limited to the four corners of the June 2017 grievance only.

## POINT II

### IN THE ALTERNATIVE PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE RELATED TO TREATMENT OR DAMAGES BEYOND THE FACTUAL ALLEGATIONS IN THE COMPLAINT.

Plaintiff should not be allowed to introduce evidence or elicit testimony related to medical treatment he received, or alleged damages incurred after March 1, 2019 where the factual allegations in the complaint end, or at the very least September 2, 2019 being the day this action was commenced.  "When plaintiffs raise claims during litigation that are not included in the complaint, courts may interpret doing so as a motion to amend the complaint." *Nelson v. McGrain*, No. 12-cv-6292, 2019 WL 2590608, *1 (W.D.N.Y. June 25, 2019) (*citing* Ayazi v. New York City Dep't of Ed., 586 F. App'x 600, 602 (2d Cir. 2014)).  "While Federal Rule of Civil Procedure 15 encourages courts to allow amendment 'when justice so requires,' they may deny amendment if 'countervailing factors such as undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment' are present." *Coney Island Resorts, Inc. v. Giuliani*, 103 F. Supp. 2d 645, 657 n.8 (E.D.N.Y. 2000).

The original class action complaint was filed on September 2, 2019. See *Allen v. DOCCS* 19-cv-08173 at Dkt. No. 1. As is relevant here, the factual allegations end in March of 2019. *Id* at ¶¶ 819-857.  The First Amended Class Action Complaint was filed on January 18, 2020. *Allen*, 19-cv-08173 at Dkt. No. 76. The factual assertions regarding Mr. Rahman remained unchanged. *Id*. at ¶¶819-857. On June 25, 2021, Plaintiff filed a Second Amended and Supplemental Class Action Complaint. *Allen*, 19-cv-08173 at Dkt. No. 256. The factual assertions regarding Mr.

Rahman remained unchanged. On July 18, 2023, The Court ordered that the named Plaintiffs be severed from the main class action. *Id*. at Dkt. No. 644. On June 30, 2023, Plaintiff Rashid Rahman filed an Amended Complaint as severed from *Allen I*. See Dkt. No. 1.

Despite the fact that the original complaint was filed almost five years ago and three amended complaints have been filed since then, the factual allegations for this case remain unchanged since the original complaint was filed and affirmatively end in March of 2019. See Dkt. No. 1 at ¶ 308. Since the final Amended Complaint was filed over a year ago, Plaintiff has failed to move to further amend or supplement pursuant to Rule 15.

In June 2023, the undersigned sent Plaintiff claim and contention interrogatories pursuant to Local Civil Rule 33.3 in an attempt to narrow the issues for trial. Specifically, these interrogatories sought (1) the specific acts or omissions that form the basis of Plaintiff's deliberate indifference §1983 claim, including the dates of the acts or omissions; and (2) each instance that Plaintiff contends that Defendant made a treatment decision not based upon their medical judgment. (See Exh. C to Manley Decl.) In response, Plaintiff's response was "go fish" and referred Defendant to thousands of pages of medical records to figure it out. (See Exh. C to Manley Decl.)

In a further effort to narrow the issues for trial, the undersigned followed up and asked Plaintiff to supplement his responses in order to narrow the issues for motions and trials. Among other issues, the time frames of the amended pleadings and Plaintiff's expert report do not match. Whereas the amended pleadings generally contain allegations until March of 2019, Plaintiff's expert report opines on records through the Fall of 2021-- well after the MWAP Policy ceased to exist and after Dr. Lee retired from his full-time position at SCF. (See Exh. D to Manley Decl.).

The summary attached to Dr. Carinci's report that was drafted by counsel ends its summary with regard to Lee's treatment of Plaintiff in July of 2019. (See Exh. F to Manley Decl. at p. 8) Even though the complaint contains a "catchall" statement that "DOCCS Continues to refuse to prescribe an effective pain medication . . .", this leaves Dr. Lee in a position where he must guess what specific allegations or dates are at issue.  It is patently unfair for him to be forced to prepare a defense, particularly when some of the dates mentioned post-date the allegations in the complaint and Dr. Lee's treatment of the Plaintiff... And despite ample opportunities to do so, Plaintiff has to date failed to narrow or specify the events constituting the basis of his §1983 claim beyond the timeline given in the Complaint. As such, Plaintiff's claims and factual evidence should be limited to the four corners of the complaint.

In any event, any testimony or evidence of either present day or post treatment provided to Plaintiff by providers other than Dr. Lee should not be allowed either. It does nothing to aid the Jury in deciding if Dr. Lee may have been deliberately indifferent during some specific (yet unspecified) time or time period.   While Dr. Lee's prescribed course of treatment may have differed from that followed by Plaintiff's later medical providers, that does not constitute deliberate indifference.  *Acosta v. Thomas,* No. 916-cv-0890 (LEK/TWD), 2019 WL 5197313 (N.D.N.Y. June 21, 2019), *report and recommendation adopted*, No. 916-cv-0890 (LEK/TWD), 2019 WL 3811852 (N.D.N.Y. Aug. 14, 2019), *aff'd,* 837 F. App'x 32 (2d Cir. 2020) (citing *Adams v. Smith*, 15-cv-913 2018 WL 1363495 (N.D.N.Y March 16, 2018 "Physicians can and do differ as to their determination of the appropriate treatment for a particular patient; that difference in opinion does not satisfy the requirements for a constitutional claim of deliberate indifference."); *Nelson v. McGrain*, No. 12-cv-6292, 2019 WL 2590608, *1 (W.D.N.Y. June 25, 2019) (granting

motion *in limine* to preclude the plaintiff from presenting evidence of several events "because none of these alleged events are discussed in the complaint"); *Mele v. Davidson & Assocs., Inc.*, No. 02-cv-0450E(F), 2004 WL 2285111 (W.D.N.Y. Oct. 7, 2004) ("Matters not raised in the pleadings are irrelevant to the action. When a claim is not alleged in the complaint or amended complaint, or a counterclaim alleged in the answer, it is irrelevant.).

Accordingly, Dr. Lee respectfully requests that Plaintiff's evidence be limited to the time period as set forth in the initial and all Amended Complaints being the period of time Mr. Rahman was under Dr. Lee's primary care being: November 2016 through March 2019 or in the alternative, through the date of filing being September of 2019.

### POINT III

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE OR TESTIMONY REGARDING DR. LEE'S MEDICAL TREATMENT OF OTHER PATIENTS, INCLUDING THOSE WHO HAVE OR HAVE HAD LAWSUITS AGAINST DR. LEE.

Plaintiff seeks to offer testimony and evidence from non-party incarcerated individuals who were also former patients of Dr. Lee. See Dkt. No. 41. To the extent they will offer any factual testimony with regard to the medical treatment Dr. Lee provided to the Plaintiff in this action, no such proffer was made in Plaintiff's Rule 26 disclosure. (Exh. I to Manley Decl.) Those whom have been identified are: Sean Pritchett; Shannon Dickenson; Aaron Dockery; and Wayne Stewart. All were deposed with regard to their own cases. However, as their depositions predated Plaintiff's notice that they would testify in his case, defense counsel was therefore unable to depose them as to any testimony they might possibly proffer to support Mr. Rahman's claims.  Further, it is highly unlikely any of these proposed witnesses attended Mr. Rahman's medical appointments.

As such, they will presumably testify as to their own treatment, not any treatment which Mr. Rahman received from Dr. Lee; this is inherently prejudicial to Dr. Lee and that testimony should not be permitted.

Moreover, and even assuming that this failure of disclosure was harmless, allowing this testimony would put Dr. Lee in the untenable position of having to bring up these witnesses' lawsuits against him on cross-examination in order to discredit them as biased witnesses. As more fully discussed discussed *infra*, this testimony is inherently improper and prejudicial, and Plaintiff should not be afforded this "back door" to introduce it.

Plaintiff essentially seeks to introduce testimony and evidence through these non-party witnesses that Dr. Lee was a "bad doctor" when treating them.  This is the very type of evidence that is prohibited under FRE 404(b)(1). It is not probative with respect to the single issue in this case, which is whether Dr. Lee was deliberately indifferent to the medical needs *of Rasheed Rahman*. Even if the court finds that an exception applies pursuant to FRE 404(b)(2) this type of evidence is far more prejudicial than probative and should not be allowed.

"A party may not introduce evidence of an adversary's past 'crime, wrong, or act ... in order to show that on a particular occasion the person acted in accordance with' a particular character trait." *Martinez v. City of New York*, No. 16-cv-79 (NRM/CLP), 2022 WL 17090267, *4 (E.D.N.Y. Nov. 18, 2022) (citing Fed. R. Evid. 404(b)(1)).

> The rationale behind the rule is that[c]haracter evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

*Lombardo v. Stone*, No. 99-cv-4603 (SAS), 2002 WL 113913 (S.D.N.Y. Jan. 29, 2002) (citation omitted).  Thus, a court may exclude evidence pursuant to Federal Rule of Evidence 403 where "its probative value is substantially outweighed by a danger of one or more of the following: 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Doe v. Lima*, No. 14-cv-2953 (PAE), 2020 WL 728813, *4 (S.D.N.Y. Feb. 13, 2020) (quoting Fed. R. Evid. 403).

In this instance, any evidence or testimony offered by non-party individuals as to Dr. Lee's treatment could only be intended to demonstrate his propensity to be a "bad doctor" which would be inconsistent with the Federal Rules of Evidence and should therefore not be admitted.  Any such evidence regarding Dr. Lee's treatment would be unfairly prejudicial, would confuse and mislead the jury, and would cause undue delay at trial.

In addition to the clearly prejudicial nature of the proposed evidence, "[p]ermitting the jury to explore that subject would invite the classic 'trial within a trial' that Rule 403 disfavors." *Doe v. Lima*, 2020 WL 728813, *8; *see also United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding exclusion of testimony to avoid "trial within a trial"); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358–59 (S.D.N.Y. 2014) (excluding introduction of allegedly infringing prior acts by movant, as it "would create a risk of unfair prejudice, confusion, and delay," diverting the jury's attention from the "singular event" at issue (citations omitted)); *United States v. Al Kassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008), *aff'd*, 660 F.3d 108 (2d Cir. 2011) ("[T]he situations are not, on their face, analogous, and it would require a trial within a trial before the jury could determine whether there was any meaningful analogy at all."); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 407 (S.D.N.Y. 1999) ("The probative value of

such an exercise is vastly outweighed by the confusion and delay that would inevitably result from conducting a trial within a trial.").

There is one trial scheduled for September 9th, entitled *Rashid Rahman vs. Chung Lee*. Class certification was denied, due in part to the different facts involved in each separate case. The proposed witnesses will have their own days in Court to discuss their own allegations; that is not this day. Allowing these individuals to discuss their specific treatment with Dr. Lee would detour a jury charged with making a targeted and limited determination of whether Plaintiff might be entitled to any damages resulting from the doctor's actions towards him, and it would unfairly prejudice Dr. Lee in the eyes of the jury. *Id.*

Were this testimony to be allowed, Dr. Lee would be forced to prepare for five trials instead of one. He would be required to 1) Cross examine each witness with regard to the years of treatment and thousands of pages of medical records for each of them (over and above Plaintiff's expert); and 2) Prepare to testify with regard to these same years of treatment and thousands of pages of medical records for each of these witnesses, so that Dr. Lee can defend himself against these separate and distinct claims and justify every medical decision he ever made. (As noted *supra*, he would be forced to do all this without having had an opportunity to depose these witnesses about Mr. Rahman's treatment.) A two-day trial would then become a ten-day trial, and at the end the jury would be tasked with wading through a sea of testimony and records in an effort to recall which specific treatment decisions Dr. Lee made with respect to the one plaintiff in this case: Rashid Rahman.

To the extent Plaintiff will contend that this extraneous evidence fits within an exception pursuant to Fed. R. Evid. 404(b)(2) for example to demonstrate that Dr. Lee had a plan or acted

10

intentionally, admission of this evidence would still be improper.

> Admissibility under Rule 404(b) is dependent upon whether "(1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction."

*McKinley v. Moore*, No. 921-cv-678 (BKS/CFH), 2024 WL 217734 (N.D.N.Y. Jan. 19, 2024) (quoting *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006)).  Here, any evidence that Dr. Lee engaged in a pattern of conduct indicative of indifference to the serious medical needs of Plaintiff, or any other non-party incarcerated individuals, must be precluded as any such evidence would run afoul of Rule 404.  *See Smith v. Fricke*, 635 F. Supp. 3d 152, 169-170 (N.D.N.Y. 2022) ("Plaintiff seeks to offer the lawsuits for one purpose: to show that, when Defendant engaged in conduct with Plaintiff, Defendant acted in conformity with his past practice. Such a purpose is impermissible.  Accordingly, the Court grants Defendant's motion to preclude evidence regarding previous lawsuits against Defendant.").

Lastly, Plaintiff should be precluded from presenting evidence of any current or former lawsuits against Dr. Lee by non-party incarcerated individuals *at all*, including former class allegations and the recent award for injunctive relief against the Chief Medical Officer in her official capacity. These separate claims bear no relevance to the instant matter; they would be offered only in an attempt to persuade the jury that Dr. Lee is a bad doctor because other people say so and DOCCS is allegedly a bad actor. Allowing this evidence would unfairly prejudice Dr. Lee. *See Bermudez v. City of New York*, No. 15-cv-3240 (KAM/RLM), 2019 WL 136633, *7 (E.D.N.Y. Jan. 8, 2019) ("Unrelated prior lawsuits are unlikely to yield evidence sufficiently probative to overcome the risk of unfair prejudice to defendants or confusing the issues for the

jury."). *See Williams v. Geraci*, No. 14-cv-5742 (SIL), 2020 WL 5848738, *15 (E.D.N.Y. Sept. 30, 2020) ("Based on Plaintiff's description of the case, it appears that he is attempting to enter it into evidence to show that deliberate indifference to medical needs is a common occurrence at the jail. Admitting this lawsuit into evidence would be unfairly prejudicial to Geraci, and thus, it will be excluded."); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 203 n.2 (E.D.N.Y. 2012) (excluding, among other things, federal civil rights lawsuits against the defendant officers in a § 1983 civil rights case to show evidence of "pattern and practice" conduct because the Court found "no 'unusual characteristics' or evidence of a 'unique scheme,' and concluded that "any probative value of the complaints would be substantially outweighed by the danger of unfair prejudice to the Defendant Officers because the lawsuits [were] mere allegations ..."). For all these reasons, Plaintiff should be precluded from introducing any evidence from non-party incarcerated individuals regarding complaints of medical treatment provided by Dr. Lee; medical treatment or the existence of former or current lawsuits against Dr. Lee at trial.

## POINT IV

### PLAINTIFF'S EXPERT SHOULD BE PRECLUDED BECAUSE THE OPINIONS PROFFERED IN HIS REPORT ARE NOT RELEVANT AND WOULD NOT ASSIST THE JURY IN DETERMINING THE ULTIMATE ISSUE IN THIS CASE

As is clear from his report, prior testimony, and representations from counsel, Dr. Carinci was hired for a different case entirely--class actions for liability and injunctive relief.

"Under Rule 702, the trial court functions as a 'gatekeeper' tasked with ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Woelfle v. Black & Decker (U.S.) Inc.*, No. 1:18-cv-486, 2023 WL 4407577, *4 (W.D.N.Y. July 7, 2023) (quoting *Daubert v. Merrell Dow. Pharm.*, 509 U.S. 579, 597 (1993)). "As established in *Daubert*

and its progeny, the baseline of Rule 702 is expert testimony that, in the Court's discretion, is

sufficiently reliable and *relevant* should be admitted." *Id.* (emphasis added); *see* Fed. R. Evid. 403.

Aside from ensuring that experts are in fact qualified, the Court must also make a determination

that an "expert's testimony on a particular issue will assist the trier of fact." *Bermudez v. City of*

*New York*, No. 15-cv-3240 (KAM/RLM), 2018 WL 6727537 (E.D.N.Y. Dec. 21, 2018) (internal

quotation marks and citations omitted).  This Court has also noted that

> A judge assessing the proffer of expert ... testimony under Rule 702 should also be
> mindful of other applicable rules. Importantly, Rule 403 of the Federal Rules of
> Evidence states that relevant evidence may be excluded if its probative value is
> substantially outweighed by the danger of unfair prejudice, confusion of the issues,
> or misleading the jury. Expert evidence can be both powerful and quite misleading
> because of the difficulty in evaluating it. Because of this risk, the judge in weighing
> possible prejudice against probative force under Rule 403 ... exercises more control
> over experts than over lay witnesses.

> *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp.

2d 448 (S.D.N.Y. 2010) (internal quotation marks, brackets and citation omitted).

Additionally, as is relevant here, "Rule 26 provides that an expert's written disclosure must

contain 'a complete statement of all opinions the witness will express,' Fed. R. Civ. P.

26(a)(2)(B)(i), and it has been held that, under the Rule, [t]he testimony of an expert witness is

limited to the scope of his expert disclosure[.]'" *Venetsky v. United States*, No. 16-cv-08464 (DF),

2019 WL 1768967, *15 (S.D.N.Y. Mar. 31, 2019) (*quoting Tomaselli v. Zimmer Inc.*, No. 14-cv-

4474 (RA/SN), 2017 WL 2820065, at *8 (S.D.N.Y. Jan. 20, 2017), *report and recommendation*

*adopted*, 2017 WL 1011492 (S.D.N.Y. Mar. 15, 2017), *aff'd sub nom. Tomaselli v. New York &*

*Presbyterian Hosp.*, 728 F. App'x 41 (2d Cir. 2018) (Summary Order).  In essence "[t]he expert's

report operates to limit the scope of the testimony that can be elicited from the expert. [Thus,

[o]pinions that are not disclosed in the expert's report cannot be offered." *LaSalle Bank Nat. Ass'n*

*v. CIBC Inc.*, No. 08-cv-8426 (WHP/HBP), 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012).

Dr. Carinci's report and prior testimony make clear that his opinions are based upon a broad and generalized examination of the policies and practices around prescribing medicine throughout the entirety of DOCCS over the span of four to six years. Plaintiff's counsel has in fact represented to this Court in the other *Allen* severed cases that "Dr. Carinci's Report focuses on the deviation from the standard of care *broadly across the MWAP system* and whether any given patient's medication was discontinued without an individualized assessment or medical justification." (See e.g. Exh. G. to Manley Decl. emphasis added). Counsel for Plaintiff even informed the Court during a recent conference in the *Allen* Related cases that Dr. Carinci was retained for the class action and did not explore the treatment individual providers rendered to Plaintiffs as he only considered gross liability. (See Exh. H to Manley Decl. at pp. 9) This trial is not about the standard of care broadly across the MWAP system. This trial is about Dr. Lee's medical treatment decisions regarding Mr. Rahman's care and whether or not he was deliberately indifferent. Dr. Carinci offers no opinion in this regard anywhere in his report. In fact, Dr. Lee's name is never even mentioned. Dr. Carinci never physically examined the Plaintiff in this matter. Rather, his report focuses on the implementation of the MWAP policy by the (then) Chief Medical Officer and Regional Medical Directors – neither of whom are defendants in this case.

Dr. Carinci's report depends on a review and analysis of the MWAP forms; that analysis in turn focuses on: 1) the number of approvals and denials by the RMDs; 2) Neurontin/Gabapentin data; and 3) that whether the RMDs were following the standard of care. None of these issues is relevant to this case, and therefore Dr. Carinci's conclusions do nothing to assist our jury in this case. Specifically, he concludes that:

A. The MWAP Policy as Implemented Did Not Meet the Standard of Care. In reaching

the conclusion, Dr. Carinci focused solely on the actions of the Regional Medical Directors, without mentioning or discussing the treating providers;

B. Oversight By DOCCS Medical Administrators was Lacking and Inadequate. Again, this section refers solely to the Regional Medical Directors; indeed, Dr. Lee (the sole defendant in this trial) at no time had any oversight functions in DOCCS;

C. Lack of Knowledge About Medications Hurt Patients. Importantly, this conclusion focuses on Gabapentin/Neurontin and the substitute medications which inmates were offered. However, Dr. Carinci makes no references to Tramadol or Ultram and only references opioid use concomitant with gabapentinoids, which is not relevant to this case;

D. The Reassessment Process Failed. It is undisputed that the reassessment process took place after Dr. Lee retired in November of 2019 and the reassessment of Mr. Rahman was undertaken by Dr. Lee's successor;

The Department of Corrections is not on trial here. No administrator is on trial here. Plaintiff was not prescribed gabapentinoids, the only medications discussed in the report. He was prescribed Tramadol and Ultram, which are not discussed in the report. Allowing Dr. Carinci to testify, therefore, would be highly prejudicial and risks all the alleged faults *throughout all of DOCCS* to be laid at the feet of Dr. Lee—who is not mentioned in the report either.

Even those sections of Dr. Carinci's report that are specific to Plaintiff are not useful to the jury and should not be permitted. Dr. Carinci's analysis, insofar as it relates to Plaintiff, can be divided into three parts:

Part I:

It is my opinion to a reasonable degree of medical certainty that Mr. Rahman's tramadol dose was discontinued without medical justification and irrespective of his prior response to the medication. The records indicate that Mr. Rahman underwent a thoracic laminectomy for tumor and history of spinal cord compression. In 2016, Mr. Rahman was prescribed Ultram for neuropathic pain in the bilateral lower extremities. In September 2016 this medication was

15

discontinued and Mr. Rahman was provided Tylenol. Shortly after the tramadol was discontinued, Mr. Rahman reported extreme pain and inability to do most exercises which he had previously been performing without effort in physical therapy.

(See Exh. E at p. 31 to Manley Decl.)

These events, however, took place at a different facility and by a different provider *two months prior* to Mr. Rahman drafting into Shawangunk and being placed under the care of Dr. Lee.

Part II:

"In January 2019 it is noted that Mr. Rahman had difficulty with activities of daily living."

*Id.*

This is the only factual assertion that mentions anything with regard to Mr. Rahman's care under Dr. Lee's watch. It neither discusses nor analyzes the treatment administered for these difficulties. Granted, it references a note in the records, but those records speak for themselves. For Dr. Carinci to testify to this in a vacuum would be improper bolstering.

Part III:

In November 2020, he underwent a reassessment which noted his paraplegia and prior history of laminectomy, however, the assessment failed to note his previous effective treatment with ultram and his neuropathic pain. A subsequent hospital visit clearly diagnosed the peripheral neuropathy and a specialist recommended treatment with ultram. This recommendation was ignored. In this case, Mr. Rahman's tramadol was discontinued without medical rationale and irrespective of his response to the medication and was subsequently refused despite a history of efficacious treatment. There is no evidence that effective alternatives were prescribed. *Id*.

As more fully discussed *supra*, the allegations in the complaint end in 2019, and this is thus beyond the scope of the complaint. Moreover, Dr. Lee retired in November of 2019; this reassessment and all subsequent events took place while Plaintiff was under the care of Dr. Win

16

(whom completed the reassessment form). Therefore, this has literally no bearing on the care that Dr. Lee provided to Mr. Rahman.

Dr. Carinci testified at his deposition that his report contained all of the opinions that he would testify to at trial, barring being presented with any supplemental information. (Exh. K to Manley Decl. at pp. 101-102). No supplemental report has been offered, and Dr. Carinci has provided no opinion with regard to the care provided by Dr. Lee to Mr. Rahman. To allow Dr. Carinci to provide an opinion to the jury at this juncture with regard to the care provided by Dr. Lee to Mr. Rahman would be prejudicial and improper. *See Venetsky v. United States*, No. 16-cv-08464 (DF), 2019 WL 1768967, *16 ("even affording Dr. Martin's expert report a generous reading, it does not include any opinions regarding a purportedly inadequate monitoring period or a failure to save images, these new opinions, stated only at Dr. Martin's deposition, must be found to be outside the scope of the opinions included in his expert report, and [must be] excluded from . . . consideration"); *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 36 (S.D.N.Y. 2014) (excluding expert testimony that exceeded the bounds of the expert's report); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272 (RPP), 2003 WL 22272587, at *1 n.3 (S.D.N.Y. Oct. 2, 2003) (confining expert's testimony to the opinions set forth in his expert report); *Taylor v. Evans*, 94-cv-8425 (CSH), 1997 WL 154010 at *2 (S.D.N.Y. Apr. 1, 1997) ("Were I to permit Wayburn to give background testimony which is not contained in his report, it would undermine the rationale for requiring the report in the first instance to provide sufficient notice of an expert's testimony so that the opposing party may prepare for cross-examination or rebuttal.").

In another case where Dr. Carinci was retained as an expert, he submitted an Independent

Medical Examination and Expert Report based on his independent medical evaluation of the Plaintiff. *Anthony Medina v. Buther*, et al. (15-cv-01955) (LAP), (comparing report at issue with prior Carinci Report). The *Medina* report clearly establishes what medical records were reviewed (including the Bates Stamps); elaborates in detail regarding Dr. Carinci's summary of the Plaintiff's medical records; and includes a detailed analysis of the effectiveness of Plaintiff's treatment during and beyond the time the MWAP Policy was implemented. (See Medina IME Report annexed to Manley Decl. at Exh. "J").

By contrast, the report Dr. Carinci submitted with respect to Mr. Rahman's treatment is wholly inadequate and without base. Dr. Carinci has not conducted a medical examination of the Plaintiff. His expert report does not contain a detailed analysis of the medical care which Dr. Lee gave Plaintiff. All he has done here is summarized a medical record summary—much of which has literally no relationship to anything that Dr. Lee did--and author a one-paragraph opinion based on that summary. For these reasons, Dr. Carinci's expert report as to Plaintiff's treatment while at SCF is deficient; it does not shed any light on the ultimate issue of whether Dr. Lee adequately treated Plaintiff; and his proffered opinions regarding are wholly irrelevant and misleading as to that sole issue. His report and testimony should therefore be precluded or in the alternative, His testimony and opinions should be limited to his report.

## POINT V

## PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY.

"In the Second Circuit, the decision of whether to permit an attorney to argue for specific amounts in damages 'is best left to the discretion of the trial judge, who may either prohibit counsel

from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions.'" *Bradshaw v. Fletcher*, No. 919-cv-428 (BKS/TWD), 2024 WL 149748, *7 (N.D.N.Y. Jan. 12, 2024) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997)). A trial court may "either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Marshall v. Port Auth. of New York & New Jersey*, No. 19-cv-2168 (LJL), 2022 WL 17491006, *5 (S.D.N.Y. Dec. 5, 2022) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d at 912). Suggesting target amounts to the jury is heavily disfavored because target amounts "anchor the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglass Corp.*, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996); *accord Bradshaw v. Fletcher*, 2024 WL 149748 at *7.

In light of the Second Circuit's guidance on this issue, Plaintiff's counsel should not be allowed to request a specific dollar amount before the jury; as the *Consorti* court warned, this would likely lead the jury to rely on the figures proffered by counsel rather than those supported by evidence. *Consorti*, 72 F.3d at 1016. Dr. Lee respectfully requests this Court exercise its considerable discretion to preclude Plaintiff from arguing for specific amounts in damages at trial, allowing the jury to rely on the evidence to determine what (if any) damages he is entitled to. *See Woolfolk v. Baldofsky*, 2022 WL 2600132, at *4 (E.D.N.Y. July 8, 2022) ("[T]he Court adopts the approach of other courts in this Circuit and prohibits Plaintiff from submitting to the jury a request for a specific dollar amount regarding his non-economic damages."); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 208 (E.D.N.Y. 2012) ("The Court finds no reason to allow Plaintiff's counsel

19

to argue a specific dollar amount to the jury in this case. Defendants' motion to preclude Plaintiff from suggesting a specific dollar amount to the jury is granted.").

## POINT VI

## DEFENDANT SHOULD BE ALLOWED TO DISCUSS THE ESSENTIAL FACTS OF PLAINTIFF'S PRIOR FELONY CONVICTIONS

In 1989, Plaintiff was convicted of murder in the second degree and robbery in the first degree; he was accordingly sentenced to a prison term of 15 years to life.  In 2012, Plaintiff was convicted of burglary in the second degree, and for that offense he was sentenced to a prison term of 15 years.  Defendant seeks to offer Plaintiff's Robbery and Burglary convictions as felonies that bear upon Plaintiff's veracity.

"The presumption under Rule 609[]—as recognized by the district court—is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes." *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) (citing 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 609.20[2] at 609–57 (2d ed.2005)); *see Laureano v. City of New York*, No. 17-cv-181 (LAP), 2021 WL 3272002, *11 (S.D.N.Y. July 30, 2021).

Although the murder and robbery convictions are more than ten years old and Plaintiff is currently serving his burglary sentence, evidence of convictions more than ten years old is admissible where the probative value substantially outweighs its prejudicial effect.  Fed. R. Evid. 609(b)(1); *see Ramsay-Nobles v. Keyser*, No. 16-cv-5778 (CM), 2020 WL 359901, *2 (S.D.N.Y. Jan. 22, 2020) ("Fed. R. Evid. 609(b): The rules [described in 609(a)] do not apply if more than 10 years have passed since the witness' conviction or release from confinement, whichever is later.

20

In that case, the conviction is considered "stale," and evidence of the crime is admissible for impeachment purposes only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effects.").  As this Court has previously found and as relevant here, "convictions for burglary and robbery are quite probative of veracity because theft crimes, and other crimes involving stealth, bear on a witness's propensity to testify truthfully." *Laureano v. City of New York*, No. 17-cv-181 (LAP), 2021 WL 3272002, *9 (internal quotation marks, ellipsis and citation omitted).

Here, the probative value of Plaintiff's felony convictions, including their names, their dates, and the sentences imposed is not substantially outweighed by the danger of unfair prejudice to Plaintiff.  First, both first degree robbery and second degree burglary – one a crime of stealth, the other a crime of theft – are the types of crimes that are generally allowed to be used as impeachment under Rule 609.  *See Ridge v. Davis*, 639 F. Supp. 3d 465, 474 (S.D.N.Y. 2022) ("Here, considering the first factor—the impeachment value of Plaintiff's burglary conviction— the Court concludes that this particular conviction of third-degree burglary, as a crime of stealth, is probative of Plaintiff's veracity."); *Laureano v. City of New York*, No. 17-cv-181, 2021 WL 3272002*, *9; *Ramsay-Nobles v. Keyser*, No. 16-cv-5778 (CM), 2020 WL 359901 at *4.  Second, while these convictions are somewhat remote in time, their probative value still weighs in favor of admitting them into evidence.  Third, Plaintiff's felony convictions for robbery and burglary are not similar in nature to the conduct at issue – alleged deliberate indifference by Dr. Lee – "and the 'less similar the pending case to the prior conviction, the less prejudicial its admission is.'" *Coleman v. Durkin*, 585 F. Supp. 3d 208, 214 (N.D.N.Y. 2022) (quoting *Thomas v. Leifeld*, No. 9:13-cv-321, 2018 WL 3387690, *3 (N.D.N.Y. July 12, 2018)); *see Bradshaw v. Burns*, 656 F.

Supp. 3d 369, 373 (N.D.N.Y. 2023) ("the fact that Plaintiff's convictions do not bear similarity to the conduct at issue in this case generally weighs in favor of admission..").

Most notably, Plaintiff's credibility is extremely relevant and important to this case. It is expected that Plaintiff will testify that he was in alleged excruciating pain all day every day and Dr. Lee consciously or recklessly refused to do anything about it. Dr. Lee controverts these claims in their entirety, and the medical records tell a different story entirely. Thus, the jury in this case will be required to make a credibility determination. *See Bradshaw v. Burns*, 656 F. Supp. 3d at 373 ("Ultimately, however, because Plaintiff plans to offer his account of interactions with Defendants, Plaintiff's credibility will have to be assessed against the credibility of the Defendants, who are expected to testify to a different version of events. *Plaintiff's character for veracity is therefore a central issue in this case, and the existence of prior felony convictions is probative of his credibility*.") (emphasis added); *Ridge v. Davis*, 639 F. Supp. 3d at 475 ("Plaintiff's credibility is highly important in this case, as he will be the primary fact witness on his own behalf offering his description of the events in question.") (internal quotation marks and citation omitted).

Because the jury will ultimately need to make a credibility determination in order to decide this case, and because both robbery and burglary bear directly on Plaintiff's credibility, the probative value of Plaintiff's felony convictions for robbery and burglary and substantially outweighs their prejudicial effect. Therefore, Plaintiff's felony convictions for robbery and burglary should be admitted for impeachment purposes at trial. *See Bradshaw v. Burns*, 656 F. Supp. 3d at 373; *Ridge v. Davis*, 639 F. Supp. 3d at 475; *Coleman v. Durkin*, 585 F. Supp. 3d at 214.

**CONCLUSION**

For the reasons set forth above, Defendant's motion *in limine* should be granted in its entirety, together with such other and further relief as this Court may deem just and proper under the circumstances.

Dated: August 14, 2024

CONWAY, DONOVAN & MANLEY, PLLC

*s/Ryan E. Manley*
Ryan E. Manley, Esq.
Ryan T. Donovan
Lauren N. Mordacq
*Attorneys for Defendant Chung Lee*
50 State Street, 2nd Floor
Albany, New York, 12207
(518) 436-1661
rmanley@lawcdm.com

23