UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RASHID RAHMAN,

                    Plaintiff,

-against-

CHUNG LEE,

                    Defendant.

---

23-cv-5665 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant's six motions in limine, (see dkt. no. 43),[1] and Plaintiff's three motions in limine, (see dkt. no. 46).  The Court held oral argument on September 3, 2024.  The Court's rulings on each motion are set forth below.

## I.    Legal Standard

Evidence must be relevant to be admissible at trial.  See Fed. R. Evid. 401-02.  "[U]nless an exception applies, all '[r]elevant evidence is admissible.'"  United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402)).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  See Fed. R. Evid. 401.  However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of

---

[1] In support of his motions in limine, Defendant has filed the Declaration of Ryan E. Manley and Exhibits A-K attached thereto. (See dkt. no. 44 ["Manley Decl."].)

1

one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403. A trial court "has broad discretion to exclude even relevant evidence" under Rule 403 if its probative value is substantially outweighed by one or more of the countervailing factors enumerated in the rule. United States v. Elfgeeh, 515 F.3d 100, 127-28 (2d Cir. 2008).

## II.  Discussion

### A. Defendant's First Motion in Limine

Defendant seeks to exclude any evidence that does not relate to the grievance claim filed with the New York State Department of Corrections and Community Supervision ("DOCCS") in 2017 arising out of a disagreement with a treating physician's prescription of a blood thinning medication in August of that year. (See dkt. no. 45 ["Def. Br."] at 1-3.)  Defendant bases his argument on Plaintiff's purported failure to exhaust his remedies with respect to the grievance he filed in June 2017, which, Defendant contends, "is the only grievance [Plaintiff] actually filed regarding medical care under [Defendant's] watch[]" that is at issue in this litigation. (Id. at 3.)

The Court denies this motion.

Defendant is correct that, pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e et seq., prisoners

2

must "exhaust prison grievance procedures before filing suit" under federal law. Jones v. Bock, 549 U.S. 199, 202 (2007) (citing 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(a)). However, "failure to exhaust is an affirmative defense under the PLRA." Id. at 216. Because Defendant seeks for the first time through his motion in limine to raise Plaintiff's failure to grieve as an affirmative defense, the Court denies this motion.

The Court "may bar any issue that was foreseeable but not raised in a pretrial order." Potthast v. Metro-N. R.R. Co., 400 F.3d 143, 154 (2d Cir. 2005). "[A] final pre-trial order 'is not to be changed lightly and that which is not alleged in the Pre-Trial Order is generally deemed waived.'" Carlson v. Northwell Health Inc., 2022 WL 1304453, at *1 (S.D.N.Y. May 2, 2022) (cleaned up) (quoting Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., 2005 WL 1026515, at *6 (S.D.N.Y. May 2, 2005)). In Carlson v. Northwell Health Inc., this Court found that the defendant had "forfeited its statute-of-limitations defense when it failed to include that defense or even any oblique reference to the defense or the facts surrounding it in the final pretrial order." Id. That is precisely the case here. On August 9, 2024, the parties jointly proposed a final pretrial order, which the Court so-ordered four days later. (See dkt. nos. 37, 41.) Absent entirely from the section titled "Summary of Claims and Defenses" was any mention of Plaintiff's failure to exhaust his

administrative remedies before filing suit.    (See dkt. no. 41 at 2.)  Accordingly, the Court finds that Defendant has waived his failure-to-exhaust defense because he failed even to reference it in the final pretrial order.

Of course, the court may "modify a pre-trial order where manifest injustice will result."  Potthast, 400 F.3d at 153 (citing Rapco, Inc. v. Comm'r of Internal Revenue, 85 F.3d 950, 953 (2d Cir. 1996)).  However, Defendant has "offered no reason for the tardiness of [his] assertion of this defense[]" or argued any injustice that would result from failing to alter the final pretrial order.  Carlson, 2022 WL 1304453, at *2.  Accordingly, the Court denies Defendant's first motion on this basis as well.

Finally, even if Defendant had not forfeited the defense, "the Court would decline to consider the issue at this stage" because a "motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim."  Id. (internal quotations and citations omitted).  Defendant had every opportunity to ask the Court to adjudicate this issue via a motion to dismiss or a motion for summary judgment but chose not to.  Accordingly, the Court also denies Defendant's first motion on this basis.

## B. Defendant's Second Motion in Limine

In his second motion in limine, Defendant asks the Court to preclude evidence related to medical treatment Plaintiff received after September 2, 2019, or damages Plaintiff incurred after that

day.    (See Def. Br. at 4.)    Defendant argues that, because
Plaintiff and several other DOCCS inmates filed the original class
action complaint in related case Allen v. Koenigsmann, 19-cv-8173,
on September 2, 2019, admitting any evidence of incidents that
occurred after that date would be "patently unfair for him[.]"
(See id. at 4, 6.)  Or, put another way, Defendant asks the Court
to limit "Plaintiff's claims and factual evidence . . . to the
four corners of the complaint."  (Id. at 6.)

　　　Defendant has not provided, and the Court has not found, any
legal authority for this proposition.  The primary decision upon
which he relies to support his motion was one in which the court
denied the plaintiff's request to "amend the Complaint to
incorporate [] new claims so that he may pursue them at trial."
Nelson v. McGrain, 2019 WL 2590608, at *1 (W.D.N.Y. June 25, 2019).
The court ruled he could not do so because "Plaintiff s[ought] to
add new defendants and claims not already in the Complaint," which
would cause the defendant undue prejudice and a prolonged delay of
litigation.    Id.    The issue, therefore, was not whether to
introduce evidence of these acts at trial, but whether to permit
the plaintiff to change completely the nature of the case with new
claims and new parties.  That is not the case here.

　　　Defendant can point to no authority that states that the
admission of other acts or omissions would be unduly prejudicial

or confusing to the jury to outweigh substantially the probative value of those acts or omissions.

To the extent Defendant objects to Plaintiff's responses to contention interrogatories and argues that Plaintiff has not provided sufficient notice through those responses about the specific facts upon which he intends to present his case at trial or the specific timeframe in dispute, it appears to the Court that Plaintiff directed Defendant to specific documents on which he intended to rely to support his claims. (See Manley Decl. Ex. C at 3.) Plus, Defendant waited until eve of trial to raise it and failed to comply with the mode of raising discovery disputes as required by Local Rule 37.2.

Accordingly, Defendant's second motion in limine is denied.

## C. Defendant's Third Motion in Limine

In his third motion in limine, Defendant asks the Court to preclude Plaintiff from offering into evidence any testimony regarding Defendant's medical treatment of other inmates in DOCCS custody. (See Def. Br. at 7.) Defendant argues that the four specific witnesses Plaintiff has identified—Sean Pritchett, Shannon Dickinson, Aaron Dockery, and Wayne Stewart (the "Four Witnesses")—would only be able to testify knowledgably about their own treatment, rather than Defendant's treatment of Plaintiff, rendering such treatment prejudicial and inadmissible under Federal Rule of Evidence 404(b)(1). (See id. at 7-8.) He also

6

argues that, because each of these Four Witnesses has filed a separate lawsuit against him, any testimony about such separate lawsuits would be highly prejudicial to him. (See id. at 8.)

Defendant's third motion in limine is denied as moot to the extent he seeks to preclude the Four Witnesses from testifying in a Rule 404(b) capacity. The Court reserves ruling on the remainder of Defendant's third motion in limine until trial.

Under Rule 404(b), the Court may not admit "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it may admit such evidence to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Defendant argues that Plaintiff may not offer the testimony of the Four Witnesses whom he has treated because such testimony would be offered improperly to prove he is a "bad doctor" based on his treatment of them on separate occasions. (See Def. Br. at 8.)

As an initial matter, Plaintiff has conceded that he will not call or utilize Pritchett, Dickinson, Dockery, or Stewart as a witness to testify in a Rule 404(b) capacity. (See dkt. no. 50 ["Pl. Opp."] at 7-8.) Accordingly, Defendant's third motion in limine is denied as moot to the extent he seeks to preclude the Four Witnesses from testifying in a Rule 404(b) capacity. Because

Plaintiff has conceded this point, Plaintiff may not offer their testimony into evidence under Rule 404(b)(2).

With respect to the Four Witnesses' testimony regarding damages Plaintiff suffered, the Court notes that "[l]ay witnesses c[an] testify about the subject of damages and traditionally do so." Dunham v. Lobello, 2023 WL 3004623, at *12 (S.D.N.Y. Apr. 19, 2023). Indeed, in Dunham v. Lobello, the court noted that a plaintiff suing under § 1983, as Plaintiff does here, can elicit a witness's testimony of "her observations of [the plaintiff] prior to and following the incident" from which the § 1983 claim arises, which would be relevant to the "impact of" the incident on the plaintiff and the "damages [the plaintiff] may have suffered." Id. In addition, "[t]estimony of [] damages witnesses is highly probative" of the issue of damages and is not substantially outweighed by the risk of any unfair prejudice, confusion, delay, or cumulative evidence. Rosario v. City of New York, 2021 WL 9455782, at *2 (S.D.N.Y. Nov. 23, 2021), opinion clarified, 2022 WL 3098305 (S.D.N.Y. Aug. 4, 2022) (denying motion in limine to preclude testimony of witnesses who would testify to the harm the plaintiff suffered while he was incarcerated).

However, the Court acknowledges Defendant's argument that, because each of the Four Witnesses has filed a separate lawsuit against him, he would be "in the untenable position of having to bring up these witnesses' lawsuits against him on cross-

examination in order to discredit them as biased witnesses." (Def. Br. at 8.)    "Courts routinely exclude 'evidence relating to previous litigation involving one or both of the same parties' where the merits of those prior litigations would 'become inextricably intertwined with the case at bar.'" MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (quoting Arlio v. Lively, 474 F.3d 46, 53 (2d Cir. 2007)).   Where, as here, the issues in dispute in the separate litigation are similar to the issues to be disputed at trial, "[t]he jury could easily confuse any evidence regarding the merits of the [other lawsuit] with the merits of" the instant case, "causing undue prejudice to" Defendant.   Id.

     As the Court stated on the record at oral argument, the Court is inclined to (a) permit Plaintiff to elicit testimony from the Four Witnesses about their observations of Plaintiff's damages at Shawangunk Correctional Facility, (b) permit Defendant to ask the Four Witnesses about the other lawsuits pending against him, but (c) preclude either party from eliciting testimony from the Four Witnesses about Defendant's medical treatment of them.   However, the Court reserves ruling on each of these issues until trial, given Plaintiff's indication at oral argument that he intends to call the Four Witnesses only as rebuttal witnesses.   Thus, the Court will revisit and rule on Defendant's third motion in limine

if and when Plaintiff calls the Four Witnesses for their rebuttal testimony.

### D. Defendant's Fourth Motion <u>in Limine</u>

In his fourth motion <u>in limine</u>, Defendant seeks an order precluding Dr. Adam Carinci, Plaintiff's expert, from testifying about the opinions proffered in his expert report. (<u>See</u> Def. Br. at 12.)  Defendant seeks to preclude the expert testimony of Dr. Carinci on several bases, including that the expert report Dr. Carinci submitted is "inadequate and without base[]" because "[a]ll he has done [] is summarize[] a medical record summary[.]" (<u>Id.</u> at 18.)  Defendant primarily asks for the preclusion of Dr. Carinci's report and testimony, or, in the alternative, for an order limiting his testimony and opinions to the contents of his expert report.  (<u>See</u> <u>id.</u>)  Defendant's motion is denied in part. The Court reserves ruling on the remainder of the motion until the parties can agree to a stipulation on the extent of Dr. Carinci's testimony.

Under Rule 702, a witness may provide expert opinion testimony if the proponent demonstrates that it is "more likely than not that[] . . . (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion

reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).  With respect to the reliability requirement that Rule 702 imposes, the Supreme Court enumerated in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> a non-exhaustive checklist for factors that governs reliability. 509 U.S. 579 (1993).  "These factors are: (1) whether the methodology or theory has been or can be tested; (2) whether the methodology or theory has been subjected to peer review and publication; (3) the methodology's error rate; and (4) whether the methodology or technique has gained general acceptance in the relevant scientific community." <u>Clerveaux v. E. Ramapo Cent. Sch. Dist.</u>, 984 F.3d 213, 233 (2d Cir. 2021).  This is, however, a flexible inquiry, and the <u>Daubert</u> factors do not constitute a definitive checklist for reliability.  <u>See Laureano v. City of New York</u>, 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021).

In addition to the requirements of Rule 702 and <u>Daubert</u>, "[w]hen assessing the relevance of expert testimony, courts 'look to the standards of Rule 401.'" <u>Id.</u> at *4 (quoting <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 265 (2d Cir. 2002)). Expert testimony is also "subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" <u>Nimely v. City of New York</u>, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403); <u>see also Reach Music Pub., Inc.</u>

v. Warner Chappell Music, Inc., 988 F. Supp. 2d 395, 401 (S.D.N.Y. 2013) (same).

Defendant's issues with Dr. Carinci's report and testimony appear to be based primarily on what he perceives as their insufficient relevance to the instant case and insufficient ability to assist the jury in understanding material issues of fact. (See Def. Br. at 14-15.) Specifically, Defendant contends that Dr. Carinci's analysis is insufficiently specific about the medical treatment that Defendant provided Plaintiff or that Plaintiff received from other medical providers within DOCCS. (See id. at 14-15, 17.) The Court rejects these arguments and finds Dr. Carinci's report and testimony to be relevant. Plaintiff may introduce Dr. Carinci's expert report and proffer the expert testimony of Dr. Carinci as evidence.

In McCullock v. H.B. Fuller Co., the Court of Appeals held that the district court properly admitted the expert testimony of a medical doctor introduced by the plaintiff, which testimony the defendant moved to preclude based on the doctor's purportedly insufficient expertise and faulty methods. 61 F.3d 1038, 1043-44 (2d Cir. 1995). The court held that because the expert was "an experienced medical doctor" who had practiced for many years in the relevant field, his background was "sufficient to permit his expert testimony" on the relevant medical issues. Id. at 1043. The court also concluded that because the medical expert "based

12

his opinion on a range of factors," including a review of the plaintiff's medical history "derived from a review of her medical and surgical reports," "pathological studies," his own "training and expertise," and "reference to various scientific and medical treatises," his testimony satisfied the test for assessing relevant scientific knowledge required by Rule 702 and Daubert. See id. at 1043-44.

The Court finds McCullock particularly instructive. As was the case there, Dr. Carinci's medical expertise on the topic of pain management—which Defendant does not challenge—as well as his extensive review of medical literature and his review of Plaintiff's medical records, (see Manley Decl. Ex. E)—suffice to establish the basis for his specialized knowledge and the sufficiency of the underlying data required to admit his expert testimony under Rule 702. As was the case in McCullock, Dr. Carinci's specialized knowledge of the topics covered in his expert report and his exhaustive review of myriad sources—including Plaintiff's own medical records and medical studies—would appear to render his expert report and expert testimony relevant to the instant litigation and sufficient to satisfy Rule 702.

The Court also rejects Defendant's contention it should not admit Dr. Carinci's testimony because Dr. Carinci's expert report focuses on an analysis of the general standard of care provided to

inmates across the DOCCS system rather than on the care provided specifically to Plaintiff. (See Def. Br. at 14.)  In other words, Defendant has challenged the admission of Dr. Carinci's expert testimony because, he argues, it is insufficiently specific to the medical care that Plaintiff received in DOCCS custody and will not help the jury understand such care. But under Rule 702, the Court may permit expert opinion testimony if the expert's "specialized knowledge will help" the jury "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  Because one of the primary disputes in this litigation is the level and adequacy of pain management care rendered to Plaintiff, Dr. Carinci's testimony regarding medically appropriate and effective treatments for chronic pain, as well as departures from those treatments, will help the jury understand the care Plaintiff specifically received.

In addition, Dr. Carinci's expert testimony about the medical treatment of chronic pain and the standards of care for such treatment, based on his medical expertise and his extensive review of the literature on the subject, is of probative value in the instant case.  Defendant has failed to provide any substantive indication that admitting Dr. Carinci's report or testimony would unduly prejudice Defendant, confuse the jury, or delay proceedings.  His argument for prejudice is premised on the fact that Dr. Carinci has not provided an opinion on the care that

Defendant specifically provided Plaintiff and has not personally examined Plaintiff. (See Def. Br. at 16-18.) But Defendant has provided no authority for the idea that an individualized medical assessment is necessary for a medical professional to testify as an expert or that an expert must analyze specifically the medical treatment a particular doctor gave to a particular patient. Nor has he provided any reason why expert testimony without an individualized medical assessment would be prejudicial or confusing.

Accordingly, the Court finds that, under Rule 403, no risk of unfair prejudice or confusion substantially outweighs the probative value of Dr. Carinci's testimony or his expert report.

Defendant does not challenge the reliability of the methods Dr. Carinci employed or of his application of those methods. In any event, the Court finds that Dr. Carinci has relied on several medical studies as well as his own extensive experience treating chronic pain. (See Manley Decl. Ex. E.) And, as is the case here, "[a]t base, as long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." Laureano, 2021 WL 3272002, at *4 (internal quotations and citations omitted).

15

In sum, Defendant's fourth motion <u>in limine</u> is denied in part. Dr. Carinci's expert report and testimony will be admitted at trial.

However, Defendant requests, and Plaintiff concedes, that Dr. Carinci's testimony should be limited only to the contents of his expert report and the supporting information relating specifically to Plaintiff's medical care because "[i]t is well-established that expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)." <u>U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.</u>, 112 F. Supp. 3d 122, 132 (S.D.N.Y. 2015) (internal quotations and citations omitted). Accordingly, the Court reserves ruling on the portion of Defendant's fourth motion <u>in limine</u> seeking to limit the scope of Dr. Carinci's testimony until the parties submit a stipulation regarding such scope, which stipulation they shall submit by 5:00 p.m. on September 4, 2024.

### E. Defendant's Fifth Motion <u>in Limine</u>

In his fifth motion <u>in limine</u>, Defendant asks the Court to preclude Plaintiff from requesting a specific dollar amount in his damages request before the jury. (<u>See</u> Def. Br. at 19.) Defendant's motion is granted.

Although the trial judge may exercise his or her discretion whether to permit a party to request a specific dollar amount for damages, <u>see</u> <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 912

(2d Cir. 1997), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), permitting such a request is "disfavored" in the Second Circuit "because it risks unfairly swaying the jury by 'anchor[ing] the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence,'" Adams-Flores v. City of New York, 2024 WL 519819, at *4 (S.D.N.Y. Feb. 9, 2024) (quoting Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996)).  Pursuant to this policy, it has become the routine practice of courts within the Second Circuit to "grant[] motions to preclude plaintiffs from requesting a specific dollar amount from the jury" without any "specific reason to contravene" the policy.  Nunez v. Diedrick, 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) (collecting cases) (internal quotations and citations omitted).

    Plaintiff has provided no such specific reason to deviate from this policy.  He only notes that the Court retains discretion to permit him to suggest a specific dollar amount and urges the Court to exercise that discretion.  (See dkt. no. 47 ["Pl. Br."] at 11-13.)  Given Plaintiff's "fail[ure] to articulate" any reason to permit a suggestion of a specific dollar amount, the Court grants Defendant's motion in limine "to preclude Plaintiff from suggesting a specific dollar amount in damages to the jury." Nunez, 2017 WL 4350572, at *2.

17

**F. Defendant's Sixth Motion <u>in Limine</u>**

In his final motion <u>in limine</u>, Defendant moves the Court to admit for impeachment purposes evidence of Plaintiff's felony convictions for robbery and burglary. (<u>See</u> Def. Br. at 20, 22.)

As Plaintiff concedes in his brief supporting his own motions <u>in limine</u>, he was convicted on two separate occasions for felony offenses he committed. (<u>See</u> Pl. Br. at 4-5, 8.) In 1989, he was convicted of first-degree robbery and second-degree murder, for which he was sentenced to a prison term of 15 years to life. (<u>See</u> <u>id.</u> at 8.) For these convictions, Plaintiff completed his sentence in 2007. (<u>See</u> <u>id.</u>) In 2012, Plaintiff was convicted of second-degree burglary, first-degree attempted assault, second-degree possession of a weapon, and third-degree criminal sale of a controlled substance. (<u>See</u> <u>id.</u> at 4-5.) For his convictions on these offenses, Plaintiff was sentenced to twenty-one years imprisonment. (<u>See</u> <u>id.</u> at 4.)

Federal Rule of Evidence 609 guides the Court's decision with respect to the admission of evidence for impeachment purposes of a witness's past convictions. At the outset, the Court notes that Rule 609(a)(2) requires the Court to admit evidence of any crime, "regardless of the punishment," "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Thus, if any of the crimes for which Plaintiff

was convicted required the prosecution to prove that he engaged in a dishonest act or false statement, the Court must admit evidence of those convictions for impeachment purposes.

"[C]rimes of force, such as armed robbery or assault," as well as "crimes of stealth, such as burglary," do not require proving an element of a dishonest act or false statement and thus do not come within the ambit of Rule 609(a)(2). United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977); see also Doe v. Lima, 2020 WL 728813, at *5 (S.D.N.Y. Feb. 13, 2020) (excluding plaintiff's robbery convictions from evidence upon noting the "general rule in the Second Circuit that violent crimes of robbery, burglary and assault are not deemed to fall within the meaning of the phrase 'dishonest act or false statement'" (quoting Ramsey-Nobles v. Keyser, 2020 WL 359901, at *2 (S.D.N.Y. Jan. 22, 2020))). Here, Plaintiff's 1989 convictions for robbery and murder and 2012 conviction for attempted assault are "crimes of force" that required no proof of a dishonest act or false statement. His 2012 conviction for burglary is similarly a "crime[] of stealth" for which no such proof was required to obtain the conviction, either. See Hayes, 553 F.2d at 827; Lima, 2020 WL 728813, at *5. A review of the relevant statutes for second-degree possession of a weapon and third-degree criminal sale of a controlled substance reveals that neither requires any element of a dishonest act or false statement to obtain a conviction. See N.Y. Penal Law § 265.03

(second-degree criminal possession of a weapon); id. § 220.39 (third-degree criminal sale of a controlled substance).

Because none of the crimes for which Plaintiff was previously convicted require proof of a dishonest act or false statement as an element to establish his guilt, Rule 609(a)(2) does not require the Court to admit them as evidence for impeachment. Accordingly, the Court will assess each set of convictions in turn under the subsections of Rule 609 applicable to each set.

1. The 1989 Conviction

Under Rule 609(b)(1), because Plaintiff was released from his imprisonment for his 1989 convictions more than ten years ago, the Court may only admit evidence of the convictions for impeachment purposes if the convictions' "probative value, supported by specific facts and circumstances, substantially outweighs [their] prejudicial effect[]" on Plaintiff. Fed. R. Evid. 609(b)(1) (noting the rule applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later"). Rule 609(b)(1) thus imposes a "heightened balancing test" that "inverts" the typical balancing test under Rule 403. Lima, 2020 WL 728813, at *6. In applying this inverted test, "[t]he court considers the same factors it considers with respect to Rule 609(a)," see infra, including "[1] the impeachment value of the prior conviction, [2] whether credibility is a crucial issue," (3) the degree of similarity between the prior conviction

for the past crime and the conduct at issue, and (4) the remoteness of the prior conviction.  Marshall v. Port Auth. of N.Y. & N.J., 2022 WL 17491006, at *3 (S.D.N.Y. Dec. 5, 2022) (collecting cases). With respect to the degree of similarity, the more similar the crime for which the witness was convicted is to the conduct at issue, the more likely the Court is to exclude the conviction to prevent "improper inferences" the jury may make.  See id.  In other words, the less similar the disputed conduct is to the conviction the party seeks to admit, the lower the risk of prejudice. Williams v. City of New York, 2023 WL 2911023, at *3 (S.D.N.Y. Apr. 12, 2023).  In addition, the "probative force of the conviction [] greatly diminishe[s] [with] age."  Id. (cleaned up) (internal quotations and citations omitted).

In addition, "the district judge must make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice."  Id. at *4 (quoting United States v. Mahler, 579 F.2d 730, 734 (2d Cir. 1978)); see also United States v. Payton, 159 F.3d 49, 57 (2d Cir. 1998) ("A determination that the probative value of the conviction substantially outweighs its prejudicial effect must be made on-the-record and based on specific facts and circumstances." (internal quotations omitted)).  The Court of Appeals has also noted Congress's intent in enacting Rule 609(b) that "convictions over ten years old [should] be admitted

very rarely and only in exceptional circumstances." Zinman v. Black & Decker (U.S.), Inc., 983 F.2d 431, 434 (2d Cir. 1993) (internal quotations and citations omitted).

Here, the Court finds that the probative value of Plaintiff's 1989 convictions for robbery and murder do not substantially outweigh the significant risk of prejudice to Plaintiff that would result from admitting evidence of those convictions at trial. Although Plaintiff's credibility will be important at trial and the murder and robbery offenses for which he was convicted in 1989 bear no resemblance to his allegations against Defendant in the instant case—diminishing the risk of prejudice to Plaintiff—the Court concludes that the impeachment value of the evidence of those convictions and the considerable passage of time since they occurred weighs much more heavily against admission.

The risk of prejudice to Plaintiff that would result from admitting evidence of the 1989 convictions is substantial. "[T]here is a great risk that a jury who learned of [his] crimes would discount his testimony as to the damages he . . . experienced . . . not because his account lacked veracity, but because jurors loathed [him] for his vile crimes." Lima, 2020 WL 728813, at *6.

With respect to the probative value of the convictions, the Court acknowledges that "crimes involving stealth," such as robbery, "bear on a witness's propensity to testify truthfully."

22

United States v. Estrada, 430 F.3d 606, 621 (2d Cir. 2005); see also Crenshaw v. Herbert, 409 F. App'x 428, 432 (2d Cir. 2011) (noting that evidence of the "prior robbery" committed by a state inmate pursuing a § 1983 action "was probative of his veracity"). However, other courts in this District have frequently excluded robbery convictions greater than ten years old because it is "not a crimen falsi that bears directly on the likelihood that the [witness] will testify falsely." Williams, 2023 WL 2911023, at *4 (emphasis added); see also Lima, 2020 WL 728813, at *5-6 (excluding robbery convictions more than thirty years old where "the commission of these offenses, by nature, d[id] not bear on the offender's character for veracity"); cf. United States v. Serrano, 192 F. Supp. 3d 407, 411 (S.D.N.Y. 2016) (excluding cross-examination regarding defendant's robbery conviction because it could be "categorized as a crime of violence" rather than a crime of stealth).

The Court thus finds that the probative value of Plaintiff's 1989 robbery conviction is not great enough to outweigh substantially the prejudice to Plaintiff that may result from its introduction as evidence because it does not bear directly on his capacity for truthfulness.  Similarly, because Plaintiff's 1989 murder conviction is a crime of violence, it bears little on his veracity.  See Serrano, 192 F. Supp. 3d at 411.

The Court's conclusion is bolstered by the fact that Plaintiff was convicted for these offenses thirty-five years ago and was released from prison for these convictions seventeen years ago. Therefore, the significant passage of time weighs heavily in favor of precluding Defendant from introducing them as evidence.

Accordingly, because the probative value of Plaintiff's 1989 convictions does not substantially outweigh the heightened risk of prejudice that he would face from their admission, Defendant's motion in limine to admit evidence of those convictions is denied.

2. The 2012 Convictions

The Court will, however, grant Defendant's motion in limine to the extent he seeks to introduce evidence of Plaintiff's 2012 conviction for second-degree burglary.

Under Rule 609(a)(1), evidence of a felony conviction—specifically, a conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year"—"must be admitted, subject to Rule 403, in a civil case[.]"  Fed. R. Evid. 609(a)(1)(A).

There is no dispute that Plaintiff's 2012 convictions were punishable by more than one year of incarceration.  Nor does Plaintiff contend that Rule 609(b) applies to these convictions. After all, he is still serving his prison sentence for these convictions, so the requisite ten years certainly have not passed since his confinement.  See id. 609(b).  Accordingly, "[b]ecause

none of [these] convictions involves a dishonest act or false statement, Rule 609(a)(1) offers the only pathway to admission[,]" subject to the balancing test required by Rule 403.  Laureano, 2021 WL 3272002, at *9 (cleaned up) (internal quotations and citations omitted).  Thus, the Court must admit them into evidence unless the prejudice to Plaintiff that would result substantially outweighs their probative value.  See Fed. R. Evid. 403.

"Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  Estrada, 430 F.3d at 617.  Specifically, the presumption under Rule 609(a)(1) is that the "'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed" should be admitted as evidence, "subject to balancing under Rule 403."  Id. at 616. Depending on the circumstances, however, it may be proper to limit, under Rule 609(a)(1), "evidence of the underlying facts or details of a crime of which [the] witness was convicted[.]"  Id.

In weighing this presumptive probative value, the Court must consider the same four factors it applied above with respect to Plaintiff's 1989 convictions:  (1) the impeachment value of the crimes, (2) the importance of the credibility of the witness, (3) the similarity between the past crime and the conduct at issue, and (4) the remoteness of the prior conviction.  Williams, 2023 WL

2911023, at *2 (citing <u>Daniels v. Loizzo</u>, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

Plaintiff's conviction for second-degree burglary is probative of Plaintiff's veracity because it is a crime of stealth and theft. <u>See</u> <u>Ridge v. Davis</u>, 639 F. Supp. 3d 465, 474 (S.D.N.Y. 2022) (citing <u>Estrada</u>, 430 F.3d at 617-19) (admitting evidence of a third-degree burglary conviction as probative of the plaintiff's veracity). Plaintiff's credibility will be critical in this case because he will testify to his experience with Defendant's medical treatment and to the personal consequences of that treatment, weighing in favor of admission. In addition, the conduct at issue in the instant case bears no resemblance to the burglary charge for which Plaintiff was convicted, further bolstering the conclusion of admission. Although twelve years have passed since Plaintiff was convicted, Plaintiff remains in custody for the conviction, and the Court concludes this factor does not cut against admission. The Court concedes that there may be a risk to Plaintiff of prejudice if evidence of his burglary conviction is admitted. However, any prejudice that may result does not substantially outweigh the notable probative value of the conviction sufficient to overcome the presumption under Rule 609(a)(1) that the "essential facts" of the burglary conviction should be admitted. <u>See</u> <u>Estrada</u>, 430 F.3d at 616.

However, the Court will preclude Defendant from offering evidence of Plaintiff's convictions for first-degree attempted assault, second-degree possession of a weapon, and third-degree criminal sale of a controlled substance. The importance of Plaintiff's credibility and the remoteness of these convictions cut the same way as they did in the Court's analysis of Plaintiff's second-degree burglary conviction. However, attempted assault and possession of a weapon are "crimes of force" that are "not particularly probative of credibility for purposes of Rule 609." Olutosin v. Gunsett, 2019 WL 5616889, at *9 (S.D.N.Y. Oct. 31, 2019) (internal quotations omitted). Similarly, "[a] prior narcotics conviction that does not apparently involve falsity is rarely probative of a witness's character for truthfulness." United States v. Steele, 216 F. Supp. 3d 317, 327 (S.D.N.Y. 2016) (citing Hayes, 553 F.2d at 828 n.8). The parties have provided no reason why Plaintiff's controlled substance conviction might bear on his truthfulness. Accordingly, the first factor of the 609(a) analysis weighs against admitting each of Plaintiff's three other 2012 convictions. Olutosin, 2019 WL 5616889, at *9; Steele, 216 F. Supp. 3d at 327.

Although the attempted assault and weapon possession convictions are as dissimilar from the conduct at issue in the instant litigation as the burglary conviction, Plaintiff's conviction for sale of a controlled substance bears enough

similarity to the issues at trial relating to the prescription of "medications with abuse potential" that this factor weighs against admitting that particular conviction.

Given the serious risk that introducing evidence of these felony convictions could inflame the jury, the Court finds that such risk substantially outweighs their minimal probative value. Accordingly, Defendant may not introduce evidence of Plaintiff's 2012 convictions for attempted assault, possession of a weapon, or criminal sale of a controlled substance.

    3. Summary

Defendant's fifth motion in limine is granted in part and denied in part. The Court will admit the "essential facts" of Plaintiff's 2012 conviction for second-degree burglary, including the nature or statutory name of the offense, its date, and the sentence imposed. Defendant may not, however, introduce any evidence, including the essential facts, of Plaintiff's 2012 convictions for first-degree attempted assault, second-degree possession of a weapon, and third-degree criminal sale of a controlled substance, or of Plaintiff's 1989 convictions for first-degree robbery and second-degree murder.

**G. Plaintiff's First Motion in Limine**

In his first motion in limine, Plaintiff seeks to preclude Defendant and any other "medical provider witness, including those placed on Defendant Lee's witness list," from offering expert or

opinion testimony at trial.    (See Pl. Br. at 1.)    Plaintiff's motion is granted in part and denied in part.

The Federal Rules of Evidence "now categorize treating physicians as expert rather than lay witnesses." Romanelli v. Long Island R.R. Co., 898 F. Supp. 2d 626, 630 (S.D.N.Y. 2012). The testimony of the treating physician may be governed by Rule 702 if his or her testimony "is limited to care, treatment, and diagnosis," because that testimony therefore "relies on scientific, technical, [and] other specialized knowledge" required to bring it within the ambit of the rule. Id. (internal quotations and citations omitted).    A treating physician not specially retained for the purpose of trial is not required to provide an expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).    Id. at 630-31.

However, "[i]n the absence of an expert report," such physician's testimony must "be limited to opinions [the physician] actually formed during the course of treating" the patient.    Id. at 631; see also Williams v. Regus Mgmt. Grp., LLC, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) (same).    Specifically, courts in the Second Circuit "have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." Regus Mgmt. Grp., LLC, 2012 WL 1711378, at *3 (emphasis

and internal quotations omitted) (collecting cases).  In other words, without an expert report, the treating physician cannot "testify[] to opinions based on information <u>not learned</u> during the course of treating the plaintiff," including "information contained in a hypothetical posed by counsel." <u>Brutton v. United States</u>, 2016 WL 889250, at *2 (S.D.N.Y. Feb. 17, 2016), <u>aff'd</u>, 687 F. App'x 56 (2d Cir. 2017) (emphasis added) (internal quotations omitted).  If, however, the plaintiff's expert "criticizes the assessments of" the treating physician, the defendant is "permitted to re-call the physician on rebuttal to respond to those criticisms."  <u>Monroe-Trice v. Unum Emp. Short-Term Disability Plan</u>, 2003 WL 68033, at *2 (S.D.N.Y. Jan. 8, 2003).

Even if a treating physician does not file an expert report, he or she must, however, "demonstrate a scientifically reliable method to support the[] conclusions" underpinning his or her opinion. <u>Romanelli</u>, 898 F. Supp. 2d at 631 (internal quotations and citations omitted).

In the instant case, Defendant purports to have provided an expert report for his own expert testimony because he listed himself as a witness and Plaintiff has been aware for some time of Defendant's medical expertise, background, training, and education. (<u>See</u> dkt. no. 48 ["Def. Opp."] at 6.)  He does not contend he filed an expert report required by Federal Rule of Civil Procedure 26(a)(2)(B) and only blames Plaintiff for failing to

depose Defendant regarding Defendant's expert testimony.   (See id.)

Defendant has thus failed to establish that he provided the expert report necessary to permit him to testify as an expert at trial.   Although he was not so required in order to testify, his failure to do so restricts his opinion testimony to the opinions he formed while actually treating Plaintiff.   See Romanelli, 898 F. Supp. 2d at 630-31.  If, however, Plaintiff's expert criticizes the medical assessments Defendant made, Defendant may "re-call [himself] on rebuttal to respond to those criticisms."   Monroe-Trice, 2003 WL 68033, at *2.

The Court reaches the same conclusion with respect to any other medical provider witness Defendant may call, including nurse Ellen Scofield and nurse Jennifer Gallagher.   Because they have submitted no expert reports, neither Scofield nor Gallagher may testify as an expert.   They may, however, testify about the opinions they formed while treating Plaintiff, and Defendant may recall them on rebuttal if Plaintiff's expert criticizes their medical assessments.

Accordingly, Plaintiff's first motion in limine is granted to the extent it seeks to preclude the expert testimony of Defendant, Ellen Scofield, or Jennifer Gallagher on matters that they did not learn during the course of treating Plaintiff, including "information contained in a hypothetical posed by counsel."

31

Brutton, 2016 WL 889250, at *2 (internal quotations omitted).  The direct "expert" testimony of Defendant, Scofield, and Gallagher shall be limited to the opinions they made while treating Plaintiff.  However, Defendant may recall himself, Scofield, or Gallagher on rebuttal if Plaintiff's expert criticizes the respective assessments they made during the course of their respective treatments of Plaintiff.

**H. Plaintiff's Second Motion in Limine**

Plaintiff's second motion in limine seeks to preclude Defendant from eliciting any information regarding Plaintiff's 1989 convictions and 2012 convictions, as well as any information regarding the felony convictions of the Four Witnesses Plaintiff intends to call at trial for their testimony regarding Plaintiff's damages.  (See Pl. Br. at 3-11.)  Because the Court has already ruled on the admissibility of Plaintiff's own convictions, see supra, the Court will not repeat itself and refers to its rulings on Defendant's sixth motion in limine.  However, Plaintiff's second motion in limine is granted to the extent he seeks the exclusion of evidence or testimony regarding the Four Witnesses' prior convictions.

Witness Sean Pritchett was convicted of two counts of attempted murder, aggravated assault, and criminal possession of a weapon, for which he is serving a sentence of 100 years to life in prison.  (See id. at 10.)  Aaron Dockery was sentenced to nine

32

years in prison for criminal possession of a weapon in the second degree and was released from custody in 2023. (See id.) Wayne Stewart is serving a life sentence for his convictions for second-degree murder, first- and second-degree assault, and first-degree criminal use of a firearm. (See id. at 11.) As the Court described above, Rule 609(a)(2) does not require that these convictions be received into evidence because each was imposed for a "crime of violence" that did not require the prosecution to prove the defendants committed a dishonest act or uttered a false statement. See Hayes, 553 F.2d at 827; Lima, 2020 WL 728813, at *5. The fourth proposed witness, Shannon Dickinson, was convicted of first-degree sexual abuse and hiring a child to commit a crime, for which he is serving a fifteen-year sentence. (See Pl. Br. at 11.) "[S]ex offenses fail to qualify as crimen falsi under Second Circuit law and are outside the reach of Rule 609(a)(2)." Lima, 2020 WL 728813, at *6 (citing United States v. Rosa, 11 F.3d 315, 316 (2d Cir. 1993)). Therefore, 609(a)(2) does not require the Court to admit the convictions of any of the Four Witnesses' convictions.

Because three of the Four Witnesses are still serving their sentences and the fourth, Aaron Dockery, was released from custody only one year ago, Rule 609(b) does not apply to evidence of their convictions, either.

Thus, the Court must assess the admissibility of the Four Witnesses' convictions under Rule 609(a)(1), which, to reiterate, subjects them to Rule 403's balancing test based on the four factors of (1) the impeachment value of the crimes, (2) the importance of the credibility of the witnesses, (3) the similarity between the past crimes and the conduct at issue, and (4) the remoteness of the prior convictions.    See Fed. R. Evid. 609(a)(1)(A); Williams, 2023 WL 2911023, at *2.

Applying the four factors above, the Court finds that Defendant is precluded from eliciting information about each of the Four Witness's convictions.  Although the credibility of each of the Four Witnesses will be important at trial, that importance is lessened by the fact that Plaintiff concedes each of them will testify only to their observations of Plaintiff's pain and suffering following Defendant's medical treatment, a topic about which Plaintiff himself and others will testify at trial.  Each of the Four Witnesses' prior convictions is dissimilar from the conduct at issue at trial, diminishing the risk of prejudice of admitting them as evidence.  The parties have not provided specifically the dates on which the Four Witnesses were convicted for their offenses, but, because three of them are still serving their sentences and Mr. Dockery was released only last year, the Court concludes the remoteness factor weighs in favor of admissibility.

34

However, the impeachment value of each of the convictions is low.    As described above, the "crimes of force" for which Pritchett, Dockery, and Stewart were convicted are "not particularly probative of credibility for purposes of Rule 609." Olutosin, 2019 WL 5616889, at *9 (internal quotations omitted). Similarly, Dickinson's "prior convictions for sexual abuse are inappropriate grounds for impeachment" because they have "very little bearing on [his] character for truthfulness" and "any probative value the convictions carry is substantially outweighed by the danger of prejudice given that [the] crimes were sexual in nature and targeted vulnerable victims." United States v. Schlussel, 2009 WL 536066, at *2 (S.D.N.Y. Feb. 27, 2009).   The risk of prejudice to Pritchett, Dockery, and Stewart is also high given the vile nature of their respective offenses.

Accordingly, Plaintiff's motion to preclude Defendant from eliciting any information about the Four Witnesses' prior convictions is granted.

## I. **Plaintiff's Third Motion in Limine**

In his third motion in limine, Plaintiff seeks permission to suggest a specific dollar amount for damages at trial.   Because the Court has already ruled with respect to Defendant's fifth motion in limine, supra, that Plaintiff may not do so, Plaintiff's motion is denied.

35

### III.  **Conclusion**

"Because the Court's rulings on these motions in limine are necessarily made without the benefit of a developed trial record, they are subject to revision at trial if necessary." Laureano, 2021 WL 3272002, at *12 (citing Davis v. City of New York, 296 F.R.D. 127, 130 (E.D.N.Y. 2013)).  The Clerk of the Court is respectfully directed to close docket entry number 43 and 46.

**SO ORDERED.**

Dated:    September 4, 2024
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge